FIRST NATIONAL BANK OF HELENA *v.* MAYS.

Opinion delivered November 28, 1927.

1. GARNISHMENT—PUBLIC OFFICERS.—State and county officers are exempt on grounds of public policy from the process of garnishment, as far as the public funds intrusted to them are concerned.

2. GARNISHMENT—FEES OF SHERIFF.—On grounds of public policy the judgment creditor of a sheriff is not entitled by equitable garnishment to impound moneys due to the sheriff for feeding county prisoners; such fees being necessary and provided by law to enable the sheriff to discharge his official duties.

3. GARNISHMENT—FEES TO SHERIFF AFTER RESIGNING.—Since the county court has a right to settle with sheriffs and readjust their settlements after their terms expire or they cease to be officers, fees due to a sheriff for feeding prisoners after he has resigned the office are not subject to garnishment.

Appeal from Phillips Chancery Court; *A. L. Hutchins,* Chancellor; affirmed.

STATEMENT OF FACTS.

Appellants brought this suit in equity against appellees to subject a certain sum of money due from Phillips County to J. D. Mays for feeding the county prisoners to the payment of a judgment against J. D. Mays. The suit was defended on the ground that the fund in question was not subject to garnishment.

The record shows that, on the 13th day of November, 1925, appellant obtained judgment in the circuit court of Phillips County against J. D. Mays in the sum of $6,204.66; that an execution issued on said judgment was returned wholly unsatisfied, and that said Mays is insolvent. The record also shows that said J. D. Mays had been sheriff of Phillips County for several years prior to November 29, 1926, at which time he resigned. On December 7, 1926, J. D. Mays filed three claims against Phillips County, aggregating $2,011, for feeding the prisoners confined in the county jail during the months of October and November, 1926, while he was sheriff of Phillips County.

The present suit was filed on December 1, 1926, and summons served on appellees, who were the defendants in the suit.

The undisputed evidence shows that the claim for feeding the county prisoners is just and correct, and that Phillips County owes Mays said sum of $2,011.  No order of allowance has been made in the county court, on account of the pendency of this suit. The chancellor found the issues in favor of appellees, and the complaint was dismissed for want of equity.  The case is here on appeal.

*Brewer & Cracraft*, for appellant.

*W. G. Dinning*, for appellee.

HART, C. J., (after stating the facts).  The sole issue · raised by the appeal is whether moneys due a sheriff for feeding the county prisoners by a county may be impounded by equitable garnishment, by a judgment creditor, after the sheriff has gone out of office, upon proof of his insolvency.

In a case-note to 17 Ann. Cas., at p. 525, it is said that the rule is well settled by the weight of authority that the compensation of public officers cannot be reached for the payment of their debts by garnishment, and among the numerous cases cited is *McMeekin* v. *State*, 9 Ark. 553.  In that case, a judgment having been obtained against one of the Judges of the Supreme Court, and the same remaining unpaid, a garnishment was served upon the Auditor to compel the amount due the Judge of the Supreme Court as his salary to be paid towards the satisfaction of the judgment.  The relief was denied, and SCOTT, J., speaking for the court, said:

"Looking, then, to the whole record, the question is distinctly presented whether or not the salary due from the State to one of her public officers can, by garnishment, be seized before being paid to him, and appropriated to the payment of his judgment debts.  And this seems to be absolutely forbidden by consideration of public policy.  In every enlightened community, public policy must ever be paramount to individual convenience and private interests, and it cannot be doubted that the most efficient administration of the Government in general, and the free course of the stream of justice in tribunals, are the very highest of these considerations.  To inter-

pret the will of the Legislature as in conflict, in any degree, with these great public objects, could rarely, if ever, be done; as to do so would be abhorrent to every legal idea of civil liberty, and that the proper and efficient administration of the State Government in all its departments would be endangered by the establishment of the doctrine contended for by the plaintiffs in error cannot, for a moment, be doubted, as it would, at all times, in its practical operation, be embarrassing, would .frequently be mischievous, and, under some circumstances, might prove fatal to the public service." To the same effect is *Rollo* v. *Andes Ins. Co.*, 23 Gratt. (Va.) 509, 14 Am. Rep. 147.

In *Pruitt* v. *Armstrong,* 56 Ala. 306, it was held that a public officer, who has public moneys in his custody for disbursement in satisfaction of demands of Government, cannot be summoned as the garnishee of one having a legal right to demand and receive from him such moneys. Brickell, C. J., speaking for the court said:

"The exemption does not rest only on the ground that the technical relation of debtor and creditor is not existing between the Government and the person who may be entitled to receive the money, which relation is the foundation of the process of garnishment, or kindred legal process, for the subjection of choses in action to the payment of debts. It is founded on considerations of public policy—the embarrassments in the administration of Government which must result if, by judicial process, the public moneys could be diverted from the specific purposes to which by law they are appropriated. Between the Government and its officers and agents, or its creditors, if those having claims on it are thus termed, individuals cannot be permitted to intervene, suspending the disbursement of the public revenue, and deferring the adjustment of the accounts of public officers, until their judicial controversies may be terminated. The law determines the character of the voucher the disbursing officer must produce to relieve himself from liability for the money committed to his custody. The officer cannot be

compelled to receive any other, nor can the officer to whom, and with whom he must account, receive from him any other evidence of the proper and legal disbursement of the public moneys.''

In *Fort Smith* v. *Quinn,* 170 Ark. 54, 278 S. W. 625, the court again said creditors of public officials and employees are not permitted to garnish their salaries. Hence, whatever may be said of the public policy of exempting officers' salaries from the process of garnishment, the doctrine has obtained too long in this State to be overturned by the courts.

The same considerations of public policy that exempt officers of the State from the process of garnishment and the like, as far as the public funds intrusted to them are concerned, applies with equal force to counties and their officers. In *Boone County* v. *Keck,* 31 Ark. 387, it was held that a county is not subject to the process of garnishment. The court said:

''Public policy, indeed, public necessity, requires that the means of public corporations, which are created for public purposes, with powers to be exercised for the public good, which can contract alone for the public, and whose only means of payment of the debts contracted is drawn from the corporators by a special levy for that purpose, should not be diverted from the purposes for which it was collected, to satisfy the demands of others than the parties contracted with.''

It is earnestly insisted by counsel for appellant that the doctrine of these cases has been modified in *Riggin* v. *Hilliard,* 56 Ark. 476, 20 S. W. 402, 35 Am. St. Rep. 113, and *Plummer* v. *School District,* 90 Ark. 236, 118 S. W. 1011, 134 Am. St. Rep. 28, 17 Ann. Cas. 508; and that the case at bar, under the facts in the record, falls within the modification to the general rule announced in the two cases last cited.

In the Hilliard case it was held that, while a county is not subject to the ordinary process of garnishment, yet in equity, when the interest of the public will not be injuriously affected, the claim of an insolvent creditor

of the county may be subjected by equitable garnishment to the payment of his debts. It was expressly stated in the opinion, however, that the remedy is allowed in no case where it is adjudged that the public will be injuriously affected.

In that case Hilliard had made a contract to repair and reconstruct a courthouse. The work had been completed under the contract, and a fixed amount was due Hilliard as contractor under it. Nothing remained to be done except to pay him the amount due under the contract, and there was no dispute as to the amount due. Hence the court said that there was no longer any public interest to be subserved by withholding payment from the contractor, and no reason for withholding the debt from the reach of the remedy of equitable garnishment.

In the Plummer case the schoolhouse had been completed according to contract, and a fixed and definite sum was due the contractor by the school district, and nothing remained to be done except to pay the contractor the amount due. The court said that the public interest would not be injuriously affected by allowing the equitable garnishment.

Here the facts are essentially different. By statute the sheriff is made jailer of the county prisoners, and certain fees are allowed him for feeding them. *Cain* v. *Woodruff County,* 89 Ark. 456, 117 S. W. 768, and *Mays* v. *Phillips County,* 168 Ark. 829, 274 S. W. 5; 279 S. W. 366. The fees are allowed by way of compensation, and are not a matter of contract. The principle is announced in *Buchanan* v. *Alexander,* 4 How. (U. S.) 20, 11 L. ed. 857, where it was said that money in the hands of a disbursing officer belongs to the United States, and, until paid over by the agent of the Government to the person entitled to it, the fund is not a part of his effects, in a legal sense. Under our statutes, sheriffs and other officers are required to account to and settle with the county court at each regular session thereof. Crawford & Moses' Dig., § 10153. The county court may employ an expert accountant to audit the books of county officers. *Leathem*

*& Co.* v. *Jackson County*, 122 Ark. 114, 182 S. W. 570, Ann. Cas. 1917B 438.

Under present statute the county judge may apply to the State Auditorial Department for an audit of the accounts of county officers. *Marable* v. *State, use of Columbia County, post* p. 589.

Under § 10165 of the Digest, the county court may at any time correct errors in the settlements of any county officer. Garnishment proceedings might result in many vexatious and harassing suits. The garnishment proceedings would necessarily suspend payment until the decision of the case. This would necessarily embarrass the officers whose duty it was to settle with officers whose salary or compensation might be the subject of garnishment. Their attendance at court might be frequently required, and these and other vexatious and harassing questions which might arise would materially embarrass them in the performance of their official duties.

In cases where the salaries of officers like clerks and sheriffs, whose compensation consists in fees, settlements with the county courts would be held up until the garnishment proceedings were terminated. It is not like a case where the county owes a debt on a contract, and nothing remains to be done except to pay the contractor the amount admitted to be due him. In such cases the county merely owes an ordinary debt to a third person, and in the Hilliard and Plummer cases, cited above, this court has held that the mere inconvenience of answering a garnishee summons would not prevent the remedy by equitable garnishment, because in no sense could the public interest be injuriously affected.

As we have just seen, it is a part of our public policy to adjust and settle the accounts of sheriffs and clerks, and the public interests as well as the public service might be seriously embarrassed and injuriously affected if the unpaid salary or compensation of public officers, and especially sheriffs, could be reached by his creditors by garnishment proceedings of any kind. The difference in the two classes of cases is clearly explained by

Judge Mitchell in *Roeller* v. *Ames*, 33 Minn. 132, 22 N. W. 177.

In *Webb* v. *McCauley*, 4 Bush (Ky.) 8, it was held that allowances made by county courts to jailers for fees and services, as such, cannot be attached in the hands of the sheriff. It was further held that, fees and allowances to jailers being necessary, and provided by law, to enable them to discharge their official duties, public policy will not permit a creditor to attach these fees and allowances in the hands of the sheriff.

Finally, it is sought to distinguish this case from the principles above announced by the fact that the garnishment proceedings in the present case were not commenced until the sheriff had resigned his office, and ceased to be an officer. The difference is one of degree merely. The right of the county court to settle with sheriffs and readjust their settlements continues after their terms expire or they cease to be officers. This question is also discussed by Judge Mitchell in his usual clear manner in *Orme* v. *Kingsley*, 73 Minn. 143, 75 N. W. 1123, 72 Am. St. Rep. 614. The learned Justice said that he had not found any case where the question was alluded to, and said that in some of the cases it does not appear what the fact was.

The result of our views is that the decree of the chancery court was correct, and it will be affirmed.